UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL ACETO, | Case No. 2:20-cv-02102-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Michael Aceto ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his applications for disability insurance ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act (the "Act"). For the reasons stated below, the Commissioner's decision is affirmed in part and reversed in part, and this action is remanded for further administrative proceedings consistent with this Order.

## I. BACKGROUND

On January 19, 2018, Plaintiff filed applications for DIB and SSI alleging a January 18, 2018 onset of disability due to diabetes, kidney disease, back problems, peripheral neuropathy, acid reflux, and high cholesterol. Administrative Record ("AR") 61-62. His applications were originally denied on March 27, 2018, and on reconsideration on August 23, 2018. AR 69, 88. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and appeared on March 3, 2020. AR 46-60. On April 1, 2020, the ALJ issued his determination, finding Plaintiff was not disabled. AR 26-38. On September 11, 2020, the Appeals Council denied review, and the ALJ's decision became the final Agency decision. AR 1-3. This civil action followed.

## II. STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

**A.   <u>Establishing Disability Under the Act</u>**

To establish a claimant is disabled under the Act, there must be substantial evidence that:

(a)   the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*,

180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Id.*

> The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Tackett*, 180 F.3d at 1098-99 (internal alterations omitted).

**B.     Summary of ALJ's Findings**

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since January 1, 2016, the alleged onset date. AR 31. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments including diabetes mellitus, inguinal

3

hernias, lumbar spondylosis, and kidney disease. AR 32. At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or equal any listed impairment in 20 C.F.R., Part 404, Subpart ("Subpt.") P, Appendix ("App.") 1. AR 32. In preparation for step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to "perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." AR 32. At step four, the ALJ determined that "[t]he claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." AR 36. In preparation for step five, the ALJ noted that:

> [t]he claimant was born on July 18, 1973 and was 42 years old, which is defined as a younger individual … on the alleged disability onset date (20 CFR 404.1563 and 416.693). . . . The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). . . . Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled" whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

AR 37. At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." AR 37. The ALJ then concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))."[2]

**C.    Issues Presented**

Plaintiff alleges two errors by the ALJ. First, Plaintiff argues that the RFC determination by the ALJ is not supported by substantial evidence. Plaintiff contends the ALJ crafted the RFC based on his lay interpretation of the medical record. ECF No. 21 at 10-16. Second, Plaintiff alleges the ALJ failed to properly apply the two step analysis applicable to Plaintiff's testimony regarding his symptoms. *Id*. at 17-19. Plaintiff further alleges this error was not harmless. *Id*. at 20.

---

[1] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

[2] The parties do not dispute the intelligibility or legibility of the record. The parties also do not substantially dispute the content of the medical record.

D.  **Discussion**

    1.    <u>The ALJ's RFC Determination is Not Support by Substantial Evidence</u>.

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. … [A] RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P (S.S.A.), 1996 WL 374184, at *1 (emphasis in original). Further, "while it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity …, it does not follow that the ALJ can substitute his own interpretations of medical records and data for medical opinions." *Mack v. Saul*, Case No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) (internal citation and quote marks omitted).

Here, Plaintiff complains that the ALJ's RFC determination stating Plaintiff can perform the full range of sedentary work (rendering him not disabled) is not supported by substantial evidence because the RFC is based on the ALJ's lay interpretation of medical records. ECF No. 21 at 11. Plaintiff argues that because the record was devoid of any medical opinion evidence, "the ALJ's RFC was fashioned out of whole cloth, based upon little more than his lay interpretation of objective evidence." *Id*. at 16. For this reason, Plaintiff states the ALJ was required to develop the record further so that he had substantial evidence to support his RFC determination. *Id*.

The Commissioner contends that Plaintiff's argument lacks merit because the ALJ's duty to develop the record is triggered only when the evidence is ambiguous or insufficient to properly evaluate the Plaintiff's allegations. ECF No. 22 at 11. The Commissioner says the record was sufficient based on Plaintiff's treating physicians declining to certify that Plaintiff was disabled or otherwise expressing an opinion on what Plaintiff "could do despite his impairments." *Id*. *citing* AR 36. The Commissioner says that the ALJ also had the benefit of "considering and translating the medical findings and testimony into a succinct RFC." *Id*. The Commissioner cites to a report dated February 23, 2018 from Las Vegas Urology stating "[t]he patient feels well with minor complaints …, has good energy level, is sleeping well and gradually improving. … Impact of disease: emotional impact—mild, no impact on recreation, no impact on relationships, no impact on sex life, no impact

5

on work/school and physical impact—mild." AR 454.³ As cited to by the Commissioner, on July 11, 2018, Victor Grigoriev, a urologist, saw Plaintiff who complained of pain, but the doctor did "not have findings to warrant pain meds." AR 597. The Commissioner concludes that with "no evidence of severe pain from kidney stones, … back pain, diabetes, and other impairments and symptoms," the ALJ properly found Plaintiff was limited to sedentary work, but not prevented from working altogether. ECF No. 22 at 12.

The record reflects, and it is undisputed, that on March 26, 2018, non-examining state agency consultant Dr. Michael Minev determined that Plaintiff's asthma as well as diabetes and hyperlipidemia impairments were not severe, but that Plaintiff's "[d]isorders of the urinary tract" was "primary" and "severe." Dr. Minev opined that:

> Although … [Plaintiff's] condition was severe, it has improved and no longer results in significant limitations in … [his] ability to perform basic work activities. We have determined that … [Plaintiff's] condition was not severe enough for 12 months in a row to keep … [him] from working. In deciding this, we considered the medical evidence, … [Plaintiff's] statements and how … [Plaintiff's] condition affected … [his] ability to work.

AR 66, 68. It is also undisputed that non-examining physician Dr. Lawrence Landwehr opined on August 10, 2018 that Plaintiff's disorders of the urinary tract, asthma, and diabetes were all non-severe, and that the "[i]mpairment or combination of impairments does [sic] not significantly limit physical or mental ability to do basic work activities." AR 85, 86. However, the ALJ found neither of "these opinions" to "be persuasive as the totality of the record, including many records that were submitted after August 2018, to support [sic] severe medically determinable impairment." AR 36.

The ALJ further found that most of Plaintiff's treatment was related to his persistent kidney stones, but that "there were no treating source statements completed, despite longitudinal medical relationships and consistent testing, with more than one provider" and "[t]here was no evidence of chronic worsening kidney disease."⁴ AR 36. The ALJ stated:

---

³ In addition, the Commissioner cites to an April 13, 2018 report, January 12, 2018 report, December 6, 2017 report, October 19, 2016 report, and September 2, 2016 report, also from Las Vegas Urology. AR 458, 462, 466, 499, 573. Other pages in the record to which the Commissioner cites do not state that Plaintiff was found to report only minor complaints. AR 602, 792, 885.

⁴ The ALJ notes that Plaintiff submitted a disability form to his primary care physician "for his kidney problems[] and was directed to his urologist, [but] his urologist did not complete a disability form." AR 36 citing AR 494 and 503. A review of these pages shows neither whether Plaintiff submitted the form to his urologist nor what the urologist did if he was presented with the form.

> A CT showed a 5 mm renal stone and mild hydronephrosis in December 2018 with flank and back pain. He had stopped Flomax due to retrograde ejaculation. He was doing well with no pain or complaints in March 2019, and had passed some fragments of stone. He did not catch any of the fragments and his urine was clear. An MRI from July 2019 showed a 22mm left parapelvic cyst and a CT showed left mild hydronephrosis and possible UPJ obstruction. His urologist believed that they were over reading the presence of the parapelvic cyst by mentioning UPJ obstruction. (Ex 13F/4, 18F/3) A renal ultrasound from December 2019 showed multiple left renal calculus with vascular calcification in the mid right kidney with bilateral pelvic fullness. (Ex 18F/7, 14F/7) He sought treatment emergently in January 2020 for dehydration, diarrhea, fatigue, and dizziness, after several episodes of diarrhea. He also reported chronic flank pain and abdominal cramping. (Ex 15F/1) A CT of the abdomen showed no acute abnormality. (Ex 15F/5, 12) He was found to have varioceles in February 2020 with some discomfort. He reported passing stones and feeling lethargic most of the time with aching testicles. (Ex 18F/12) I note that the residual functional capacity adequately considered and evaluated all of his alleged symptoms, and his activities of daily living do not show limitations beyond those contained in the residual functional capacity. (Ex 5E) He was able to complete all of his activities of daily living, and cared for his son, daughter, and the family dog. He reported that he was responsible for making food for his children, cleaning, and changing his daughter's diapers. (Ex 5E/2).

AR 35-37.

The ALJ also had the benefit of and opportunity to question the Vocational Expert ("VE"), Lawrence Haney; however, the ALJ asked the VE only two questions. AR 59. The first question asked whether the VE had sufficient information to described Plaintiff's past work, to which the VE said "Yes." *Id*. The ALJ's second question asked the VE to describe the Plaintiff's work "in terms of job title, exertion level, and skill level." *Id*. The VE did so. *Id*. Plaintiff's attorney then asked the VE one question; that is, to consider the following hypothetical:

> If you have an individual who because of kidney stones and pain who would be missing two to three days of work consistently on a monthly basis, what impact would that have on work at these jobs and work in general?

*Id*. The VE responded by stating that "there would be no work available, past or future." AR 59-60.

Without commenting on or appearing to consider this part of the VE's testimony, the ALJ concluded that the VE's testimony was consistent with information in the Dictionary of Occupational Titles, and that Plaintiff was unable to perform past relevant work, but that Plaintiff "had the residual functional capacity to perform the full range of sedentary work." AR 37. The ALJ does not explain how he reached his RFC conclusion. *Id*.

The ALJ's RFC determination that Plaintiff can "perform the full range of sedentary work" is not supported by a citation to any evidence. AR 37. And, the ALJ did not pose any hypotheticals to the VE; nor did the ALJ ask the VE for an opinion regarding what types of work Plaintiff could perform or whether any such jobs exist in the national economy. AR 59.[5] The ALJ also concluded that the opinions of the state consultants were unpersuasive. AR 36. The ALJ did not seek any additional information or opinion from any health care provider regarding Plaintiff's limitations or ability to work. In fact, having rejected the only medical opinions offered regarding Plaintiff's ability to work, the ALJ was without any health care provider's opinion regarding Plaintiff's capacity to sit, stand, walk, think, follow instructions, tolerate an 8-hour work day or whether the frequency of his kidney stones might interfere with his work capacity.

An ALJ in social security cases has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); 20 C.F.R. § 404.1512(d) (2000). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ did not find the record inadequate in this case. In fact, the ALJ found many records submitted supported a finding that Plaintiff suffered from "severe medically determinable impairments." AR 36. The ALJ also found Plaintiff was unable to perform any past relevant work. *Id*. But, even after carefully considering these findings by the ALJ and that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012), the Court still cannot discern how the ALJ leapt from severe impairment and inability to perform past work to the conclusion that Plaintiff has "the residual functional capacity to perform the full range of sedentary work." AR 37. Substantial evidence does not support this finding.

---

[5] The ALJ does appear to have referenced the Medical–Vocational Guidelines found at 20 C.F.R. pt. 404, subpt. P, app 2. AR 32.

The ALJ states he considered the entirety of the record and gave Plaintiff the benefit of the doubt; however, the ALJ failed to explain how he translated his findings into an RFC that allows Plaintiff to do all sedentary work. There is simply nothing to which the ALJ points to support this conclusion. Rather, it appears, that the ALJ reached his conclusion on some unknown basis that the Court cannot assess. *See Tackett*, 180 F.3d at 1102-03; *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record)). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). It is factual findings to support the ALJ's "full range of sedentary work" conclusion that is missing here. Hence, the ALJ's RFC determination is not supported by substantial evidence and this matter is remanded for further proceedings on this issue.

        2.        <u>The ALJ Properly Evaluated Plaintiff's Subjective Complaints</u>.

The ALJ must engage in a two-step analysis when evaluating a plaintiff's testimony concerning pain, symptoms, and level of limitation is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony concerning the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal citation omitted). An ALJ's finding on this matter must be properly supported by the record and sufficiently specific to demonstrate to a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 948, 958 (9th Cir. 2002) (citation omitted). A plaintiff's statement about his pain or other symptoms alone will not establish that he is disabled. 20 C.F.R. § 416.929(a)(1); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). A plaintiff is not entitled to benefits under the Social Security Act unless the plaintiff

9

is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The ALJ found that "[a]fter careful consideration of the evidence, the … [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the … [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 33. Plaintiff testified that a condition with his veins (venous diseases for which he had surgery) prevents him from sitting for more than a half hour, and that he can probably stand for about the same length of time; his diabetes is under control; and that his kidney disease is treated by a urologist. AR 51-52. Plaintiff stated he has chronic kidney stones that have not been remedied by a change in his diet. *Id*. Plaintiff was asked and responded to questions about his lower back that causes painful sciatica. AR 52. When questioned by his counsel, Plaintiff stated that he has constant pain in his left kidney—he wakes up with it and goes to sleep with it—that he understands the pain is caused by scarring of his kidney and kidney stones; he passes kidney stones every month (sometimes twice a month); when the kidney stones are too big for him to pass, he must go to the doctor who performs a procedure that removes the stones; doctor intervention for his kidney stones happen once or twice a year; and, that the smaller stones that he is able to pass on his own are just as painful as the bigger stones. AR 53-54. Plaintiff testified that it takes five to seven days to pass the smaller stones he passes on his own. AR 54. When this happens, Plaintiff stated he is in a lot of pain and is mostly laying down. *Id*. Plaintiff also testified that on these occasions he does not "do much at all" and that his "family has been helping … [him] out a lot." *Id*. Plaintiff stated when he passes a stone his left leg is "like dead," he has no strength, he gets tired walking, and that most of the day is spent lying down. AR 55-56. Plaintiff reiterated that he is passing stones about once a month and, when this happens, he is out for about a week. AR 57. Plaintiff also stated that he has a lot of pain when bending down, carrying, and lifting, and that he cannot drive his son to school when passing a stone. AR 57-58.

The ALJ stated that he "considered and evaluated all of … [Plaintiff's] alleged symptoms, and his activities of daily living …." AR 35. The ALJ states that the "activities of daily living do

not show limitations beyond those contained in the residual functional capacity." *Id*. The ALJ also states that Plaintiff was making food for his children, cleaning, changing his daughter's diapers, and taking care of the family dog. AR 34-35.[6] After summarizing the entire medical record, the ALJ found that "[t]here was no evidence of chronic worsening kidney disease"; that Plaintiff "was able to concentrate well enough to answer" the ALJ's questions "in detail"; and that "the objective evidence of record did not support" Plaintiff's claims. AR 36.

Given the ALJ found no malingering, to reject Plaintiff's testimony concerning the severity of his symptoms the ALJ must offer "specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see also Brown-Hunter*, 806 F.3d at 493 (internal citation omitted). The court in *Brown-Hunter* stated:

> A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell* [*v. Sullivan*], 947 F.2d [341,] 345-46 [(9th Cir. 1991)] …. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted). *See also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony" (emphasis added)).

*Id*.

The ALJ's findings are neither general nor do they fail to identify the evidence that undermines Plaintiff's subjective complaint. Instead, the ALJ considered Plaintiff's history and treatment for diabetes, which was stable and perhaps improving (AR 33); inguinal hernia; that in December 2017 Plaintiff stated he felt well "with only minor complaints" (*id*.); Plaintiff's history and treatment for his lumbar spine (AR 34); and the full history of Plaintiff's kidney stones and kidney disease. AR 34-36. The detail in this section of the ALJ's report demonstrate that he did not arbitrarily discredit Plaintiff's subjective complaints of intensity, persistence, and limiting effect, but instead found them to be not entirely consistent with the medical evidence. AR 33-36. There is no indication that the ALJ rejected Plaintiff's subjective complaints because the kidney stone events,

---
[6] This information appears in a "Function Report" completed by Plaintiff on March 11, 2018. AR 226-233.

causing the most pain, come and go or because the ALJ believed Plaintiff had to be totally incapacitated to find his testimony fully credible. *See Garrison*, 759 F.3d at 1016-17.

Plaintiff points to nothing in the record, other than his testimony, that the passing of a kidney stone keeps him from doing pretty much everything for an entire week approximately once a month. The law is clear that the ALJ could not grant Plaintiff's claim for disability benefits based solely on Plaintiff's his subjective complaints (42 U.S.C. § 423(d)(5)(A)). Even if the Court finds Plaintiff's testimony regarding his kidney stones important, the Court cannot "substitute its judgment for that of the [ALJ]." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The evidence on which the ALJ relied to reach his conclusion regarding Plaintiff's subjective complaints was sufficient and specific. While the evidence before the ALJ regarding Plaintiff's subjective complaints "may have been subject to more than one rational interpretation," the Court" must defer to the ALJ's conclusion regarding Plaintiff's subjective complaint testimony. *Batson*, 359 F.3d at 1198, *citing Andrews*, 53 F.3d at 1041.

### IV.   ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion to Reverse or Remand Defendant's Final Decision Denying Plaintiff's Application for Disability Insurance Benefits (ECF No. 21) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 22) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Commissioner's adverse disability determination is REVERSED and that this action is REMANDED for further administrative proceedings concerning the ALJ's residual functional capacity finding consistent with this Order pursuant to sentence four of 42 U.S.C. 405(g).

DATED this 20th day of December, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE